IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| PAMELA R. GILMAN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 3:22-cv-01283-S-BT |
| | § | |
| SHELLPOINT MORTGAGE SERVICING, | § | |
| | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court in this removed civil action arising out of foreclosure proceedings initiated in Dallas County, Texas, is Defendant NewRez LLC d/b/a Shellpoint Mortgage Servicing's (Shellpoint) Motion for Summary Judgment (ECF No. 57). For the reasons explained below, the Court should **GRANT** the Motion, **DISMISS** Plaintiff Pamela R. Gilman's claims with prejudice, and **ORDER** that Shellpoint is entitled to non-judicially foreclose the lien on the property at issue.

## Background

In 2006, Gilman and third-party defendant Eugene S. Garza purchased a home in Dallas (the "Property"), with the proceeds of a loan from Blue Star Financial, Inc. (the "Loan"). *See* MSJ App. Ex. A (ECF No. 59). Gilman and Garza executed (1) a note (the "Note") promising to repay the Loan and (2) a Deed of Trust securing the Note with a lien against the Property (the "Deed of Trust" or

1

"DOT"). *See id.* at Ex. A-3. The DOT named Mortgage Electronic Registration Systems, Inc. (MERS) as beneficiary, and MERS later assigned the DOT to Bank of New York Mellon (BoNYM), as trustee for the Certificateholders CWABS, Inc., Asset-Backed Certificates, Series 2006-7. *Id.* at Ex. A. Defendant Shellpoint began servicing the Loan in early 2020. *See id.*

Although the Note and DOT require Gilman and Garza to make regular payments, they defaulted on their obligations in or around July or August 2019. *See id.* at Ex. A-6 (payment history); *see also* Ex. B at 92:19–21 ("Q: When is the last time you made a payment on this loan? A: August 2019"). The Loan servicer at that time—Bank of America—sent Gilman and Garza a letter on August 26, 2019, notifying them of the default and explaining (1) how to bring the Loan current, (2) that failure to cure the default by October 5, 2019 would result in acceleration of the Note and sale of the Property, and (3) that foreclosure avoidance options may be available. *Id.* Ex. A-7 (Bank of America default letter). Gilman and Garza did not make any payments or otherwise cure their default, and Shellpoint—after taking over servicing of the Loan—notified Gilman and Garza through its attorneys that the Note had been accelerated and that the Property would be sold at a non-judicial foreclosure sale on April 7, 2020. *See id.* at Ex. A-8 (letter from McCarthy Holthus, LLP). However, due to the COVID-19 pandemic, BoNYM placed the Loan under a foreclosure moratorium and cancelled the sale. *Id.* at Ex. A.

After Shellpoint notified Gilman that it had rescheduled the foreclosure sale for June 7, 2022, *see id.* at Ex. A-9 (2022 letter from the Padgett Law Firm),

Gilman—represented by counsel—filed the instant lawsuit against Shellpoint in Texas state court. *See* Compl. The state court judge granted Gilman's request for a temporary restraining order and cancelled the June 7, 2022 foreclosure sale. *Id.* at Ex. 2 (signed TRO). Shellpoint timely removed the case to this Court. *See* Not. Removal. Gilman continues to live at the Property. MSJ App. at Ex. A.

In her Complaint, Gilman asserted causes of action for breach of contract and negligent misrepresentation. *See* Compl. Specifically, Gilman complains that (1) Shellpoint did not provide proper notice of default and opportunity to cure in breach of the DOT and the Texas Property Code; (2) Shellpoint did not provide proper notice of acceleration in breach of the DOT and the Texas Property Code; (4) Shellpoint did not make reasonable efforts to inform Gilman of loss mitigation options under HUD regulations before accelerating the Note; and (4) Shellpoint otherwise made negligent misrepresentations in communicating loss mitigation options. As part of its answer, Shellpoint asserted a counterclaim for declaratory judgment allowing for a non-judicial foreclosure or, in the alternative, a judicial foreclosure of the lien on the Property. *See* Def.'s Answer and Counterclaims (ECF No. 11). Shellpoint brings its counterclaim against both Gilman and Garza; however, Garza failed to appear in this lawsuit, and the Clerk entered a default against him. *See* Clerk's Entry of Default (ECF No. 23).

After taking Gilman's deposition in March 2023, Shellpoint filed this Motion for Summary Judgment (ECF No. 57), a Brief/Memorandum in Support (ECF No. 58), and an Appendix in Support (ECF No. 59), arguing that it is entitled to

summary judgment on all of Gilman's claims as well as its own counterclaims. Gilman, proceeding *pro se* after the Court allowed her attorney to withdraw in late 2022, did not file a formal response to the Motion for Summary Judgment. Instead, she filed four "Certificates of Interested Persons/Disclosure Statements" with various statements and documentation appended. (ECF Nos. 62, 63, 67, and 70). In them, Gilman argues that Shellpoint has not provided her with sufficient discovery, requests additional documentation, and accuses Shellpoint of "harassment, bullying, and intimidation."[1] *See, e.g.,* June 27 Certificate (ECF No. 70); June 1 Certificate (ECF No. 62). The Court construes these filings together as Gilman's Response to Shellpoint's Motion.

The parties have therefore had a fair opportunity to brief the issues raised in Shellpoint's Motion, and it is ripe for consideration.

## Legal Standard

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party seeking summary judgment bears the initial burden of showing the absence of a genuine issue for trial. *Duffy v. Leading Edge Prods., Inc.*, 44 F.3d 308, 312 (5th Cir. 1995) (citation omitted). The movant's burden can

---

[1] Shellpoint urges the Court to find that Gilman waived or abandoned her claims after her attorney withdrew. *See* MSJ Br. 6, 14–15. However, in view of Gilman's *pro se* status and Shellpoint's counterclaim for an order of foreclosure, the Court should—in the interests of fairness and judicial economy—consider Gilman's claims on the merits.

be satisfied by demonstrating that there is an absence of evidence to support the nonmoving party's case, which the nonmovant bears the burden of proving at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant meets its initial burden, the nonmovant must show that summary judgment is not proper. *Duckett v. City of Cedar Park*, 950 F.2d 272, 276 (5th Cir. 1992) (citation omitted). The parties may satisfy their respective burdens "by tendering depositions, affidavits, and other competent evidence." *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992) (first citing *Int'l Shortstop, Inc. v. Rally's*, 939 F.2d 1257, 1263 (5th Cir. 1991); and then citing Fed. R. Civ. P. 56(e)). All evidence must be viewed in the light most favorable to the party opposing the summary judgment motion. *Rosado v. Deters*, 5 F.3d 119, 123 (5th Cir. 1993) (citing *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986)).

The party opposing the summary judgment motion must identify specific evidence in the record and state the precise manner in which that evidence supports the party's claim. *Esquivel v. McCarthy*, 2016 WL 6093327, at *2 (N.D. Tex. Oct. 18, 2016) (Lindsay, J.) (citing *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1988)). Further, a nonmoving party opposing summary judgment who bears the burden of proof at trial "must produce evidence to establish the existence of each element for which he bears the burden of proof." *Andrews v. CompUSA, Inc.*, 2002 WL 265089, *2 (N.D. Tex. Feb. 21, 2002). The fact that a litigant is proceeding *pro se* in a particular case does not alter these principles. *See Davis v. Fernandez*, 798 F.3d 290, 293 (5th Cir. 2015) ("[T]his is

not to say that *pro se* plaintiffs don't have to submit competent evidence to avoid summary judgment, because they do."). "Rule 56 does not impose a duty on the court to 'sift through the record in search of evidence' to support the nonmovant's opposition to the motion for summary judgment." *Andrews,* 2002 WL 265089, *2. (first citing *Ragas*, 136 F.3d at 458; and then citing *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir. 1992)).

## Analysis

Because no reasonable jury could conclude on this record that Shellpoint breached the DOT or made a negligent misrepresentation, the Court should hold that Shellpoint is entitled to summary judgment on Gilman's claims. Further, there is no genuine issue of material fact concerning Shellpoint's right to foreclose the lien on the Property, and the Court should therefore hold that Shellpoint is entitled to non-judicially foreclose the lien.

I.    <u>Shellpoint is entitled to summary judgment on Gilman's breach of contract claim.</u>

Shellpoint first seeks summary judgment on Gilman's breach of contract claim. Gilman argues in her Complaint that Shellpoint breached the DOT and Tex. Prop. Code § 51.002 by failing to provide her with proper notice of default and acceleration. *See* Compl. 8. She also argues that the acceleration and foreclosure were "subject to the limitations of HUD regulations which require Defendant to make reasonable efforts to inform Plaintiff of any assistance option before accelerating the note," and that Shellpoint has breached their contract by failing to

do so. *Id.* To prevail on her breach of contract claim under either theory, Gilman must establish: (1) the existence of a valid contract; (2) that she performed or tendered performance; (3) that Shellpoint breached the contract; and (4) that she sustained damages as the result of the breach. *Valero Mktg. & Supply Co. v. Kalama Int'l*, 51 S.W.3d 345, 351 (Tex. App.—Houston [1st Dist.] 2001, no pet.); *see also Landrum v. Devenport*, 616 S.W.2d 359, 361 (Tex. App.—Texarkana 1981, no writ). Shellpoint does not dispute that the Note and DOT are valid contracts. However, it contends that Gilman cannot raise a genuine fact issue as to any of the other elements of her claim. The Court should find that Shellpoint is entitled to summary judgment on Gilman's breach of contract claim because she can point to no evidence that she was damaged by the alleged breach.[2] *See* MSJ Br. 15–19; 23.

---

[2] Shellpoint argues that "because the borrowers have never cured the default noticed in August 2019, they were not entitled to any further notice of default or opportunity to cure." MSJ Br. 17. However, Gilman's default on her repayment obligations does not entitle Shellpoint to summary judgment on Gilman's breach of contract claims to the extent they are based on her right to receive notice. While, under Texas law, performance or tendered performance by the plaintiff is a requirement for a breach of contract claim, "[i]f performance of the terms of a deed of trust governing the parties' rights and obligations in the event of default can always be excused by pointing to the debtor's default under the terms of the note, the notice terms have no meaning." *Williams v. Wells Fargo Bank, N.A.*, 884 F.3d 239, 245 (5th Cir. 2018). "A lender's obligations when a borrower defaults— including providing notice—are independent of the borrower's obligation to make monthly payments." *Shastry v. U.S. Bank Nat'l Ass'n as Successor Tr. to Wachovia Bank Nat'l Ass'n*, 2021 WL 849015, at *8 (N.D. Tex. Feb. 11, 2021) (quoting *Williams*, 884 F.3d at 245), report and recommendation adopted, 2021 WL 842132 (N.D. Tex. Mar. 5, 2021). Here, the record indicates that Gilman has not remitted any payments on the Loan since before Shellpoint began servicing the loan. MSJ App. Ex. A-7. But the notice requirements on which Gilman bases her

Indeed, the Court is aware of no evidence in the summary judgment record, and Gilman herself has pointed to none, showing that Gilman suffered harm as a result of Shellpoint's alleged breach. Under Texas law, if there is no foreclosure and the property owner maintains title and continuous possession of the property, there are no damages recoverable under a breach of contract claim. *Robinson v. Wells Fargo Bank NA*, 2020 WL 7010043, at *3 (N.D. Tex. Oct. 15, 2020) (Rutherford, J.), report and recommendation adopted, 2021 WL 77778 (N.D. Tex. Jan. 7, 2021). Here, there is no genuine dispute that Gilman remains in possession of the Property. The foreclosure sale never went forward—it was cancelled the first time due to COVID-19 measures, and the second time due to a temporary restraining order issued by the state court. *See* MSJ App. at Ex. A ¶¶ 25, 29. As a result, Gilman still resides at the Property. *Id.* at Ex. B, 85:1–16 ("Yes, I reside at the property"). Nor is there any evidence in the record suggesting that Gilman has lost title to the Property.

---

breach of contract claim are "independent" of the borrowers' obligation to make monthly payments. *See Williams*, 884 F.3d at 245. As noted in *Williams*, if the debtor's default always precluded any breach of contract claim, the intent of the parties' Deed of Trust could not be given effect. *See id.* Accordingly, Gilman's default on her repayment obligations does not entitle Shellpoint to summary judgment on Gilman's breach of contract claims to the extent they are based on her right to receive notice.

In fact, it is clear from the record that Gilman has not incurred any damages at all. In her deposition, Gilman was unable to identify any damages she sustained as a result of Shellpoint's alleged breach:

> Q: Do you have any damages, monetary damages that you are seeking to recover in this case?
>
> A: I do not have any listed monetary numbers to give you. I cannot answer that question.

MSJ App. Ex. B, 141:18–21.

> Q: As we sit here presently, can you recall any physical harm that you suffered in connection with your loan?
>
> A: Not at this time, but that doesn't mean that somewhere down the line it hasn't existed.
>
> Q: What manner of physical harm do you believe you may have suffered at some point in the past?
>
> A: I don't have an answer for that question. I really cannot answer it.

MSJ App. Ex. B, 129:18–130:1.

While Gilman testified that she may have been harmed in the past, she did not respond to Shellpoint's motion with any evidence sufficient to raise a genuine question as to whether she suffered damages. The Certificate of Interested Persons Statement that Gilman filed on June 1, 2023, which the Court construes as her Response to Shellpoint's Motion, does not meet Gilman's burden to show that

summary judgment is not proper by pointing the Court to specific evidence in the record that would establish a fact issue on the question of damages. *See* June 1 Cert.; *Duckett*, 950 F.2d at 276 (citation omitted). To the contrary, to the extent her Response references the summary judgment record, it confirms that she has not suffered any damages: "I have asked for loan status corrections and credit rating updates. Any further damages awarded to the Plaintiff have not been presented or discussed." June 1 Cert. With no evidence to raise a genuine dispute that Gilman suffered damages as a result of Shellpoint's alleged breach of the DOT, she will be unable to prove an essential element of her breach of contract claim, and therefore the Court should hold that Shellpoint is entitled to summary judgment. *Peoples v. BAC Home Loans Servicing, LP*, 2011 WL 1107211, at *4 (N.D. Tex. March 25, 2011) (holding that plaintiff failed to raise a fact issue as to damages for breach of contract where no foreclosure occurred, she remained in continuous possession and occupation of the property, and title remained in her name). This disposes of Gilman's breach of contract claim, and therefore the Court need not address whether there is a genuine issue of material fact as to the remaining elements of the claim.

II.    <u>Shellpoint is entitled to summary judgment on Gilman's negligent misrepresentation claim.</u>

Shellpoint also argues that it is entitled to summary judgment on Gilman's negligent misrepresentation claim. In her Complaint, Gilman alleges that "the lender made misrepresentations in communicating to Plaintiff the options of loss

mitigation, upon which Plaintiff relied to her detriment in a transaction in which Plaintiff had a pecuniary interest. The representations were false when made and Defendant is now attempting to foreclose on Plaintiff's property." Compl. 8. To succeed on her negligent misrepresentation claim, Gilman must show that (1) Shellpoint made a representation in the course of its business or in a transaction in which it had a pecuniary interest; (2) Shellpoint supplied false information for the guidance of others in its business; (3) Shellpoint did not exercise reasonable care or competence in obtaining or communicating the information; and (4) Gilman suffered pecuniary loss by justifiably relying on the representations. *DeFranceschi v. Wells Fargo Bank, NA*, 837 F.Supp.2d 616, 625 (N.D. Tex. 2011) (citing *Fed. Land Bank Ass'n of Tyler v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991)). In addition to arguing that there is no evidence in the record that Gilman suffered damages from any alleged misrepresentation, Shellpoint points out that Gilman has not identified any specific misrepresentation, nor the person from whom she received any alleged information. *See* MSJ Br. 20–22.

The Court should find that summary judgment is warranted because Gilman cannot point to a genuine issue of material fact as to any element of her negligent misrepresentation claim. In her Complaint and her Response to Shellpoint's Motion, Gilman does not identify a specific representation or statement beyond alleging that "the lender made misrepresentations in communicating . . . the options of loss mitigation." Compl. 8. Upon examination of the record, there is no evidence that Shellpoint supplied Gilman with false information as required to

prove her negligent misrepresentation claim. Indeed, in her deposition, Gilman takes issue with a *lack* of communication from Shellpoint rather than any particular statement, testifying, "I want to be very clear that I don't have any claims against Shellpoint except that they have never provided me legal, written documentation that they have authority and jurisdiction to collect on this loan." MSJ App. Ex. B, 39:24–40:2. Additionally, for the reasons set forth above, Gilman lacks sufficient evidence to raise a genuine dispute that she suffered damages as a result of any alleged misrepresentation. Without pointing the Court to a "misstatement of existing fact" or any evidence of damages, Gilman cannot succeed on her negligent misrepresentation claim, and the Court should hold that Shellpoint is entitled to judgment as a matter of law. *DeFranceschi*, 837 F.Supp.2d at 625 (agreeing that summary judgment on a negligent misrepresentation claim was warranted where plaintiffs did not point to any misstatement of existing fact).

III.    Gilman is not entitled to attorneys' fees.

Gilman requested attorneys' fees in addition to a judgment against Shellpoint. *See* Compl. 10. Because the Court should grant summary judgment in favor of Shellpoint and dismiss Gilman's claims, the Court should also grant summary judgment on her claim for fees.

IV.    Shellpoint is entitled to summary judgment on its counterclaim that it is entitled to non-judicially foreclose on the Property.

Shellpoint also seeks summary judgment on its counterclaim, arguing that it is entitled to foreclose on the Property under Tex. Prop. Code §§ 51.0001–.016.

12

In Texas, a party seeking to foreclose on real property secured by a security instrument with a power of sale has the option either to sell property in a non-judicial foreclosure in accordance with the powers expressly granted in a deed of trust, or bring a judicial foreclosure action. *Summers v. Liberty Savings Bank, FSB*, 2021 WL 1240788, at *12 (N.D. Tex. March 8, 2021), report and recommendation adopted, 2021 WL 1237128 (N.D. Tex. April 2, 2021). To obtain a judicial foreclosure, the party seeking to foreclose must show (1) the existence of a note secured by real property; (2) that some part of the note is due and unpaid; and (3) that the real property subject to the lien is the same property that it seeks to foreclose. *TFHSP, LLC Series 10147 v. U.S. Bank Nat. Ass'n*, 2016 WL 2856006, at *3 (N.D. Tex. April 18, 2016), report and recommendation adopted, 2016 WL 2853565 (N.D. Tex. July 20, 2016). Prior to foreclosing under a deed of trust, there must also be evidence that notice of default, acceleration, and foreclosure were issued in accordance with the requirements in Tex. Prop. Code § 51.002. *Summers*, 2021 WL 1240788, at *12. Under Texas law, both the mortgagee and the mortgage servicer have the authority to foreclose. *Johnson v. Wells Fargo Bank, NA*, 999 F.Supp.2d 919, 928 (N.D. Tex. 2014) (citing Tex. Prop. Code § 51.0025).

In this case, the summary judgment evidence demonstrates that Gilman executed an adjustable-rate promissory Note, MSJ App. Ex. A-2, and the DOT granting a power of sale, *id*. at Ex. A-3, securing the repayment of the Note with a lien against the Property. There is no dispute that Gilman defaulted on the Note when she stopped making payments in summer 2019. MSJ App. Ex. B at 92:19–21

13

("Q: When is the last time you made a payment on this loan? A: August 2019"). Shellpoint has also submitted evidence of proper notice of default and acceleration, *id.* at Ex. A-7 (August 26, 2019 letter from Bank of America) as well as notice of foreclosure, within the time required by Texas law. *Id.* at Ex. A-8 (timely notice of foreclosure). And Shellpoint meets the statutory requirements to administer the foreclosure of the Property on behalf of the mortgagee—it services the Loan under an agreement with BoNYM as trustee granting it authority to service the Loan, and the notices provided to Gilman included the required disclosures under the statute. Tex. Prop. Code § 51.0025; MSJ App. at Exs. A ¶ 16, A-7, & A-8. Shellpoint has therefore met its summary judgment burden to show that no genuine issue exists as to any material fact on its counterclaim for foreclosure. Beyond insisting that Shellpoint has not provided documentation of the legal transfer of its mortgage servicing responsibilities from Bank of America—which Shellpoint did in fact provide, *see* MSJ App. Ex. A-5—Gilman's response does not identify any evidence that would raise a fact issue as to whether Shellpoint is entitled to foreclose the lien on the Property. *See* June 1 Cert. The Court should therefore grant summary judgment on Shellpoint's counterclaim and issue an order that Shellpoint is entitled to non-judicially foreclose on the Property. *See TFHSP, LLC Series 10147*, 2016 WL 2856006, at *3.

V.    Shellpoint is entitled to an award of attorneys' fees and costs.

Finally, Shellpoint moves for an award of attorneys' fees and expenses, arguing that it "has a contractual right to collect all expenses incurred to enforce

the note and exercise the deed of trust power of sale, including reasonable attorneys' fees." MSJ Br. 27. Specifically, the DOT states in Section 22 that the "Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees." MSJ App. Ex. A-3. In addition, the Note specifies in Section 7.E that "the Note Holder will have the right to be paid back by [borrower] for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees." *Id.* at Ex. A-2. Under Texas law, a mortgagee may recover attorneys' fees and costs pursuant to a mortgage contract. *See TFHSP, LLC Series 10147*, 2016 WL 2856006, at *4 (citing *Richardson v. Wells Fargo Bank, NA*, 740 F.3d 1035, 1040 (5th Cir. 2016)); *May v. Wells Fargo Bank, NA*, 2013 WL 4647673, at *5–6 (S.D. Tex. Aug. 29, 2013).

Based on this contractual right to recover fees, Shellpoint requests judgment awarding it $39,946.50 in reasonable attorneys' fees and $1,138.72 in costs incurred to litigate this action. MSJ Br. 28. This amount includes $27,062.50 in fees and $1,138.72 in costs incurred by Shellpoint's counsel through February 28, 2023, *see* MSJ App. Ex. A-10 (loan payoff quote including litigation costs of $28,201.22); $4,884.00 in fees for the month of March 2023 that have been incurred but not yet paid by Shellpoint; and $8,000.00 in additional fees incurred in the month of April 2023. *See* MSJ App Ex. E ¶ 8 (declaration of Adam Ragan). Shellpoint also requests that the court award it attorneys' fees in the amount of $5,000.00, $15,000.00, and $25,000.00 for post-judgment motions, an appeal to

the court of appeals, and an appeal to the Supreme Court, respectively. MSJ Br. 28. Gilman did not object to the rates charged, hours billed, or any other portion of Shellpoint's request for attorneys' fees and costs, nor respond to it at all. For the following reasons, the Court should hold that Shellpoint is entitled to an award of $31,946.50 in attorneys' fees plus $1,138.72 in costs, for a total of $33,085.22.

The Court utilizes the "lodestar" method in calculating the attorneys' fee award. *See Heidtman v. Cnty. of El Paso*, 171 F.3d 1038, 1043 (5th Cir. 1999) (citations omitted); *Simicek v. Wells Fargo Bank, NA*, 2013 WL 5425126, at *5 (S.D. Tex. Sept. 26, 2013). The lodestar is calculated by multiplying the reasonable number of hours spent on the case by an attorney by an appropriate hourly rate. *See Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 490 (5th Cir. 2012). There is a strong presumption that the lodestar amount is reasonable. *See Perdue v. Kenny A.*, 559 U.S. 542, 552 (2010). Because the lodestar is presumed reasonable, it should be modified only in exceptional circumstances. *See Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993).

First, the Court considers whether the hourly rates charged by Akerman, LLP, the firm representing Shellpoint in this matter, are reasonable. Rates are reasonable when they "are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984). The Court may use its own expertise and judgment to independently assess the hourly rates charged for attorney's fees. *SortiumUSA, LLC v. Hunger*, 2015 WL 179025, at *5 (N.D. Tex.

Jan. 14, 2015) (Lynn, J.) (*citing Davis v. Bd. of Sch. Comm'rs of Mobile Cnty.*, 526 F.2d 865, 868 (5th Cir. 1976); *Vanliner Ins. v. DerMargosian*, 2014 WL 1632181, at *2 (N.D. Tex. Apr. 24, 2014) (noting that the Court is an expert on the reasonableness of attorney's fees)).

Here, the Court considers the declaration of Adam Ragan, partner in Akerman's Dallas office, who represented Shellpoint in this matter alongside attorneys Charles Townsend, Jessica Riley, and Martin Dungan, with support from paralegal Jenny Richardson. *See* MSJ App. Ex. E ¶ 9. Ragan has been admitted to the Texas bar since 2011, as well as all courts in the state of Texas and the United States Court of Appeals for the Fifth Circuit. *Id.* at ¶ 3–4. Ragan and Townsend, both partners, charged an hourly rate of $350; Riley and Dungan, both associates, charged an hourly rate of $240; and Richardson, a paralegal, charged an hourly rate of $105. *Id.* at ¶ 9. Ragan declares that these rates are reasonable in light of the time and effort Shellpoint's counsel was required to expend, the type of claims and issues involved, and the results obtained. *Id.* at ¶ 10. Based on the Court's knowledge of rates charged for legal services by Dallas attorneys with the level of skill, competence, and ability of Shellpoint's counsel, and its experience in setting attorneys' fees in other cases, the Court should agree that the hourly rates charged by Shellpoint's counsel are reasonable.

Next, the Court considers the reasonableness of the number of hours billed. A party seeking attorney's fees bears the burden of establishing that the number of hours expended were reasonable with adequate time records as evidentiary

support. *See Watkins*, 7 F.3d at 457. The Court uses this time as the benchmark, but should exclude any time that is excessive, duplicative, unnecessary, or not adequately documented. *See id.* Shellpoint submitted invoices to establish the number of hours that Akerman expended in this matter, *see* MSJ App. Ex. E-1, showing that Akerman billed a total of 123.5 hours through March 31, 2023. These invoices show that Akerman attorneys spent time on matters including, among other things, drafting proposals for joint reports and scheduling orders, outlining and finalizing Shellpoint's counterclaims, corresponding with opposing counsel when he was involved with the case, preparing Rule 26 disclosures, and preparing for Gilman's deposition. *See generally id.* at Ex. E-1. The Court should conclude that Akerman's billing records are consistent with what can reasonably be expected and that the total of 123.5 hours reflected in the invoices expended on Shellpoint's behalf in this matter is reasonable.

Ragan states in his declaration that Akerman billed an additional 25 hours in April 2023. *Id.* at Ex. E, ¶ 8. However, he does not attach an invoice reflecting the allocation of these hours between the different attorneys involved with the case nor the tasks those attorneys worked on. Without invoices, time sheets, or other record of how these hours were spent, there is inadequate documentation for the Court to meaningfully review the reasonableness of these hours, and the Court should exclude them from the lodestar rate. *See Barrow v. Greenville Ind. Sch. Dist.*, 2005 WL 6789456, at *11 (N.D. Tex. Dec. 20, 2005) ("The district court may properly reduce or eliminate hours when the supporting documentation is too

vague to permit meaningful review") (quoting *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995)). The Court should also exclude any award for the expense of litigating post-judgment motions, as Shellpoint has similarly failed to attach any documentation or record that would justify the amounts requested.

The Court therefore calculates the appropriate lodestar rate here as follows: 9.6 hours for Townsend at $350 an hour ($3,360); 21.8 hours for Ragan at $350 an hour ($7,630); 64.7 hours for Riley at $240 an hour ($15,528); 18.9 hours for Dungan at $240 an hour ($4,536); and 8.5 hours for Richardson at $105 an hour ($892.50), for a total of 123.5 hours and $31,946,50. The lodestar is presumed to be reasonable and should only be modified in exceptional cases, but the Court must consider whether it should be adjusted upward or downward based on the *Johnson* factors.[3] *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974). Here, the Court should find that no adjustment to the lodestar figure is necessary and that Shellpoint is entitled to recover $31,946.50 in attorneys' fees.

Shellpoint also requests $1,138.72 in costs incurred to litigate recoverable claims in this action. The Court notes that Shellpoint did not include a bill of cost

---

[3] The *Johnson* factors are: (1) the time and labor required; (2) the novelty and difficulty of the legal issues; (3) the skill required to properly perform the legal service; (4) the preclusion of other employment; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of counsel; (10) the desirability of the case; (11) the duration and nature of the professional relationship with the client; and (12) awards in similar cases. *See Johnson*, 448 F.2d at 717–19.

or an otherwise itemized breakdown of what comprises these litigation costs. The Supreme Court has indicated that "federal courts may only award those costs articulated in [28 U.S.C. § 1920] absent explicit statutory or contractual authorization to the contrary." *Cook Children's Med. Center v. New England PPO Plan of Gen. Consol. Management Inc.*, 491 F.3d 266, 274 (5th Cir. 2007) (citing *Crawford Fitting Co. v. JT Gibbons, Inc.*, 482 U.S. 437, 444–45 (1987). Here, both Section 7.E of the Note and Section 22 of the DOT state that the lender has the right to recover "all of its costs and expenses in enforcing this Note." MSJ App. Ex. A-1 & A-2. Shellpoint is therefore entitled to recover its litigation costs of $1,138.72 as authorized by the Note and the DOT. *See May v. Wells Fargo Bank, NA*, 2013 WL 4647673, at *5–6 (S.D. Tex. Aug. 29, 2013) (awarding costs in addition to attorneys' fees pursuant to a deed of trust).

For the foregoing reasons, the Court should hold that Shellpoint is entitled to an award of $31,946.50 in attorneys' fees plus $1,138.72 in costs, for a total of $33,085.22.

## Recommendation

For the reasons explained above, the Court should **GRANT** Shellpoint's Motion for Summary Judgment, **DISMISS** Gilman's claims with prejudice, and **ORDER** that Shellpoint is entitled to non-judicially foreclose the lien on the Property. The Court should also award Shellpoint $33,085.22 in attorneys' fees and costs as authorized by the Note and DOT.

**SO RECOMMENDED**.

January 18, 2024.

_____
REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved part from appealing the factual findings and legal conclusion of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United States Automobile Ass'n.* 79 F.3d 1415, 1417 (5th Cir. 1996).